UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES WELLS, *et al.*,

Plaintiffs,

v.

CITY OF MONROE, *et al.*,

Defendants.

Case No. C04-1590L

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on "Defendants' Motion for Summary Judgment." Dkt. # 30. Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there

is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient," however, and factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

Taking the evidence presented in the light most favorable to plaintiffs,[1] the Court finds as follows:

(1) Plaintiffs argue that the search of their home and the arrest of plaintiff Wells violated the Fourth Amendment because defendant Martinez did not have probable cause to believe that a crime had been committed and failed to disclose material facts in his "Affidavit for Search Warrant," thereby manipulating the inferences to be drawn by the reviewing judicial officer. At the time the arrest was made, the facts and circumstances within Martinez' knowledge and of which he had reasonably trustworthy information (including his own observations of the interaction between Wells and the confidential informant and the second-hand identification of Wells as the source of the drugs), were sufficient to warrant a prudent person to believe that a

[1] In light of the strong interest in resolving disputes on their merits and the fact that defendants received an electronic copy of plaintiffs' memorandum on Monday, August 15, 2005, the Court has considered plaintiffs' untimely opposition and the related exhibits. The Court assumes that plaintiffs' counsel will take whatever steps are necessary to avoid future technical problems in filing on the CM/ECF system, including not waiting until late at night before attempting to docket her responsive memorandum.

crime may have been committed. Hunter v. Bryant, 502 U.S. 224, 228 (1991). Plaintiffs do not identify any false statements in Martinez' affidavit in support of their judicial deception argument. Rather, they assert that the officer failed to include important background information and details regarding the confidential informant and the department's contacts (or lack of contacts) with James Wells. While some of the omitted information may have been noteworthy, Martinez' affidavit is thorough and does not appear to be misleading in any material respect. Plaintiffs have not made a substantial showing that Martinez engaged in deliberate falsehood or acted in reckless disregard for the truth. Nor have plaintiffs attempted to show that, had the magistrate been informed of any or all of the details regarding criminal histories and/or corroborating evidence, he or she would not have issued the warrant. The Court finds that there was probable cause to support the search of plaintiffs' home and the seizure of James Wells.

(2) In their complaint, plaintiffs allege that defendants used force to arrest plaintiff Wells and that, as a result of this force, plaintiff Wells was injured. Complaint at ¶¶ 3.9 - 3.10. Plaintiffs neither allege that the force used against plaintiff Wells was excessive nor that it constituted a violation of the Fourth Amendment. Plaintiffs cannot assert an excessive force claim for the first time in response to a motion for summary judgment.

(3) Defendants argue that plaintiffs' claim under Article I, Section 7 of the Washington State Constitution fails because there is no augmenting legislation that would allow plaintiffs to pursue a constitutional claim for monetary damages. Motion at 9 n.2. See also Reid v. Pierce County, 136 Wn.2d 195, 213 (1998). Although defendants have not identified an alternative avenue of redress available to plaintiffs, plaintiffs have made no effort to respond to defendants' argument or otherwise support their state constitutional claim. Defendants' motion to dismiss is

therefore granted as to this claim.

(4) Plaintiff Trevino has asserted an unreasonable seizure claim under the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983. It is not clear whether Trevino's Fourth Amendment claim is based on her detention during service of the search warrant or on her subsequent arrest and transport to the Monroe Police Department. "[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Michigan v. Summers, 452 U.S. 692, 705 (1981) (footnotes omitted). Such a detention may be unlawful under the Fourth Amendment, however, if the detention itself is unreasonable in the circumstances or if it is carried out in an unreasonable manner. Meredith v. Erath, 342 F.3d 1057, 1061 (9th Cir. 2003). Detaining Trevino in her living room as the officers entered the residence served an important law enforcement interest: it minimized the risk of harm to the officers by ensuring that Trevino could not obtain a weapon. See Ganwich v. Knapp, 319 F.3d 1115, 1120 (9th Cir. 2003). Plaintiffs have not alleged facts from which one could conclude that the initial seizure was "unnecessarily painful, degrading, or prolonged" or that it involved "an undue invasion of privacy." Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir. 1994). The initial seizure was not, therefore, in violation of the Fourth Amendment.

Her subsequent arrest and transport to the police department, however, cannot be justified by the limited authority to detain recognized by the Supreme Court in Summers. Trevino had a right to be free from warrantless arrest unless, "under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." United States v. Fixen, 780 F.2d

1434, 1436 (9th Cir. 1986) (quoting United States v. Gonzales, 749 F.2d 1329, 1337 (9th Cir. 1984)). In their motion, defendants assert that

> [p]laintiff Trevino was brought to the Monroe Police Department for questioning related to the use and delivery of methamphetamine, and because she resided in the home where marijuana pipes were found in violation of RCW 69.50.412(1). In addition, there was probable cause to question her about potential child endangerment or neglect based upon the unkempt state of the house when the officers arrived, which included no electricity, an empty refrigerator, rotting food, clothes strewn everywhere, and the general uncleanliness of the house.

Motion at 11. The arrest of a potential witness, simply because she is a potential witness, violates the basic tenets of the Fourth Amendment. If a suspect in a crime may not be arrested in the absence of probable cause, absent extenuating circumstances a mere witness to the crime is surely entitled to at least the same level of protection from unreasonable seizures. If, as stated in their opening memorandum, Martinez arrested Trevino for questioning regarding past crimes (whether it be plaintiff Wells' alleged sale of methamphetamine and/or the possibility of child endangerment or neglect), the arrest would be without probable cause and in violation of the Fourth Amendment. To the extent defendants have asserted that the arrest was prompted by the discovery of the three marijuana pipes in the house, there is, at the very least, a fact issue regarding the veracity of such an assertion: there is evidence in the record from which a reasonable factfinder could conclude that the pipes had not yet been located when defendants arrested Trevino, making this justification suspect.[2]

---

[2] The same problem dogs defendants' assertion that Trevino was arrested because of the condition of the house: to the extent the lack of refrigeration, empty larders, and general uncleanliness were discovered only after Trevino was arrested, those factors cannot serve as a justification for the arrest. In addition, even if defendants had been aware of the existence of the pipes and/or the unsanitary conditions before Martinez arrested plaintiff Trevino, it is not clear that their discovery would give rise to a reasonable belief that Trevino had committed a crime.

(5) Defendant Martinez has argued that, even if his arrest of plaintiff Trevino violated the constitution, he is entitled to qualified immunity. When a defendant claims qualified immunity from civil damages, plaintiff is required to show that the official has violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Having determined that, if all disputed facts are taken in the light most favorable to plaintiffs, defendant Martinez arrested plaintiff Trevino without probable cause to believe that she had committed a crime, the Court must determine whether the right allegedly violated was clearly established at the time defendant acted. "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).[3] Because no reasonable officer in Martinez' position on June 20, 2001, could have believed that it was lawful to arrest a citizen for questioning, without a warrant and without probable cause to believe that she had committed a crime, Martinez is not entitled to qualified immunity.

(6) Under 42 U.S.C. § 1983, a local government entity cannot be held liable simply because its employee violated plaintiff's constitutional rights. Rather, a municipality such as the

---

[3] In an effort to prevent constitutional law from stagnating, the Supreme Court insists that the trial court determine whether defendant's conduct violated a constitutional right before determining whether the constitutional right was clearly established at the time of plaintiff's injury. Without such a two-part analysis, individual rights would be frozen in time as each reviewing court simply determined whether or not defendant's conduct had been found unconstitutional in the past. By first evaluating the constitutional claim on its merits, constitutional rights may develop over time even if the defendant in a particular case is immune from suit because the right found to have been violated was not clearly established at the time he or she acted. If similar conduct should occur in the future, the earlier finding that the conduct implicated a constitutional right would ensure that the later defendant would be held responsible and would not be entitled to qualified immunity.

City of Monroe may be held liable for constitutional violations only when they occur as a result of the government's official "policy or custom." Monell v. New York City Dept. Soc. Servs., 436 U.S. 658, 694 (1978). This rule ensures that municipalities are liable only for "acts that are, properly speaking, acts 'of the municipality.'" Pembauer v. Cincinnati, 475 U.S. 469, 480 (1986). Although discrete decisions by a government official with ultimate authority on a matter may serve as "policymaking" by the government (Pembauer, 475 U.S. at 481), the acts of subordinate employees, such the officer in this case, are generally insufficient to create municipal liability under § 1983 (Monell, 436 U.S. at 694). The constitutionally infirm acts of subordinate employees may, however, suggest the existence of a municipal policy or custom where there is evidence of "widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" Nadell v. Las Vegas Metro. Police Dept., 268 F.3d 924, 929 (9th Cir. 2001).

As discussed above, defendant Martinez' application for a search and arrest warrant and the subsequent arrest of plaintiff Wells were constitutional and cannot be the basis for municipal liability under § 1983. Plaintiffs have also failed to provide any evidence of a policy authorizing the arrest of potential witnesses or a history of similar constitutional violations. Even if the fact that no employees have been disciplined over the arrest of plaintiff Trevino could support a finding of "custom," that failure, which post-dated plaintiff Trevino's arrest, cannot be said to have caused the constitutional violation of which she complains. The City of Monroe is entitled to summary judgment on all of plaintiffs' claims.

For all of the foregoing reasons, defendants' motion for summary judgment is

GRANTED in part and DENIED in part. Plaintiff Wells' claims are dismissed in their entirety. Plaintiff Trevino's state constitution claim and her claims against the City of Monroe are dismissed. Plaintiff Trevino may, however, proceed to trial on her unreasonable seizure claim against defendant Martinez under the Fourth Amendment to the United States Constitution.

DATED this 4th day of October, 2005.

Robert S. Lasnik
United States District Judge